UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Marcus Everngam,
    Claimant

        v.                          Civil No. 08-cv-329-SM
                                    Opinion No. 2009 DNH 050
Michael J. Astrue,
Commissioner, Social
Security Administration,
    Respondent

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Marcus Everngam, moves to reverse the Commissioner's decision denying his application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Commissioner moves for an order affirming his decision.  For the reasons given below, the Commissioner's motion is granted.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917–18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the

**Background**

The parties have submitted a Joint Statement of Material

Facts (document no. 10).  That statement is part of the court's

record and will be summarized here, rather than repeated in full.


The medical record in this case includes the following

relevant findings, impressions, and diagnoses, all made by

treating sources.  A May 16, 2006, radiology report listed

findings of "[m]ild degenerative changes at L5-S1 facets" and

"[n]ormal sacrum and SI joints," along with the following

impression: "Mild degenerative facet disease."  (Administrative

Transcript (hereinafter "Tr.") at 217.)  From late August through

early October, 2006, claimant received physical therapy for his

back condition.


On November 22, 2006, Everngam's claimed onset date, he

sought treatment for pain in his left calf.  (Tr. at 227.)  After

four days, the pain had not abated, and a follow-up visit

resulted in a clinical impression of lumbar radiculopathy.[2]  (Id.

at 243.)  A radiology report dated November 27 found: "There

[are] some mild degenerative changes of the facet joint at L5-S1.

---

evidence is for the [Commissioner], not the courts."  Irlanda
Ortiz, 955 F.2d at 769 (citations omitted).

   [2] "Radiculopathy" is a "disease of the nerve roots."
DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1595 (31st ed. 2007).

The disk spaces are preserved.  There have been no significant
changes." (<u>Id.</u> at 248.)  A November 30 MRI revealed the
following:

> At L5-S1 there is a large left posterior paracentral
> disk herniation with some extruded disk material seen
> to the left of midline and posteriorly to the S1 level.
> There is some mass effect on the thecal sac anteriorly
> and laterally on the left as well as apparent mass
> effect upon the left S1 nerve root and likely S2 with
> lateral recess compromise.  There is some degenerative
> change of the facet joints at L5-S1.

(<u>Id.</u> at 250.)  Based on those findings, Everngam was assessed
with "[l]umbar radiculitis[3] secondary to . . . L5-S1 herniated
nucleus pulposus." (<u>Id.</u>)  Those findings also led to the
following impression: "L5-S1: Large left posterior paracentral
disk herniation of intrusion type with some mass effect upon the
thecal sac and the left S1 and S2 nerve roots." (<u>Id.</u> at 252.)  A
December MRI scan revealed "a large soft tissue mass at L5-S1 on
the left displacing the thecal sac and nerve root consistent with
a disc herniation," (<u>id.</u> at 390), which led to the following
impression: "Back pain and left S1 radiculopathy secondary to L5-
S1 HNP with some element of nerve root compromise," (<u>id.</u>).

     From December, 2006, through January, 2007, Everngam
underwent a series of epidural steroid injections for his back

---

[3] "Radiculitis" is an "inflamation of the root of a spinal
nerve."  DORLAND'S, <u>supra</u> note 2, at 1595.

condition.  On April 4, 2007, Everngam received the following
medical assessment: "Discogenic low back pain.  The symptoms of
radiculopathy appear to have resolved.  Neurologic examination
reveals preserved neurologic function."  (Tr. at 392.)  The most
recent treating-source medical note in the administrative record,
dated May 16, 2007, includes the following assessment:
"Resolution of lumbar radiculopathy with conservative measures.
Neurological examination reveals preservation of nerve root
function."  (Id. at 394.)  In the same note, under the heading
"Plan," Dr. Palacio reported: "No further diagnostic or
therapeutic measures are recommended at this point.  Mr. Everngam
has had a very satisfactory resolution of the radiculopathy
secondary to his herniated disk."  (Id.)  Dr. Palacio concluded:

> I explained to Mr. Everngam that, certainly, at some
> point, he could have a recurrence of the disk
> herniation with radicular symptoms.  However, he is not
> at risk for a permanent irreversible neurologic injury
> and that any time he has a recurrence, appropriate
> measures can be taken in a timely fashion, and
> treatment need not necessarily require surgical
> intervention.  Overall, his long-term prognosis is
> good.  Followup will continue an a p.r.n. basis.

(Id. at 395.)  In other words, in the opinion of a treating
physician, Everngam's radiculitis/radiculopathy and his herniated
disk had both resolved by May 16, 2007, less than six months
after they had been diagnosed.

During the course of his treatment, claimant underwent straight-leg raising tests on the following dates, with the following results: May 16, 2006, negative bilaterally (Tr. at 357); May 19, 2006, negative bilaterally (id. at 358); August 22, 2006, negative bilaterally (id. at 362); September 19, 2006, negative bilaterally (id. at 363); November 27, 2006, right leg negative, left leg positive for pain at forty-five degrees (id. at 364); November 30, 2006, positive to forty degrees on the left (id. at 250); December 26, 2006, positive at forty-five degrees on the left (id. at 374); January 30, 2007, negative bilaterally (id. at 383); February 22, 2007, positive on the left (id. at 390); March 28, 2007, negative bilaterally (id. at 371); April 4, 2007, positive on the left (id. at 392); May 16, 2007, negative bilaterally (id. at 394).

Everngam filed an application for Social Security disability insurance benefits on March 1, 2007, a little more than three months after his claimed onset date of November 22, 2006.  After conducting a hearing on Everngam's claim, the Administrative Law Judge ("ALJ") issued a decision which included the following findings:

> 3.  The claimant has the following severe impairment: low back pain with a herniated disc at L5-S1 (20 CFR 404.1520(c)).
>
> . . . .

6

> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(Tr. at 9-12.)  The ALJ explained the foregoing finding in the following way:

> Listing 1.04 establishes that a disorder of the spine is disabling based upon the medical evidence alone where, in relevant part, the condition results in compromise of a nerve root with evidence of nerve root compression characterized by neuro[ ]-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy associated with muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

> In this case the claimant['s] MRI testing did show disc herniation, but in December 2006 Dr. Dirksmeier noted a non-antalgic gait and no[ ] muscle spasm.  Straight leg testing in January 2007 was negative.

(Tr. at 10).


## Discussion

Everngam argues that the ALJ's decision should be reversed, and the case remanded, because the ALJ incorrectly determined that he did not have a listed impairment.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The issue in this case is whether Everngam was under a disability during the time for which he sought benefits.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The relevant Social Security regulations further provide: "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."  20 C.F.R. § 404.1509

In order to determine whether a claimant is disabled, the Commissioner is required to employ a five-step process.  See 20 U.S.C. §§ 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the

conditions for one of the "listed" impairments in the
Social Security regulations, then the application is
granted; 4) if the [claimant's] "residual functional
capacity" is such that he or she can still perform past
relevant work, then the application is denied; 5) if
the [claimant], given his or her residual functional
capacity, education, work experience, and age, is
unable to do any other work, the application is
granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 1520).


Claimant bears the burden of proving that he is disabled.

See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by

a preponderance of the evidence.  See Mandziej v. Chater, 944 F.

Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F.

Supp. 808, 810-11) (D. Mass. 1982)).


Regarding step three – the point in the five-step evaluation

process where Everngam argues the ALJ erred – the regulations

provide: "If you have an impairment(s) that meets or equals one

of our listings in appendix 1 of this subpart and meets the

duration requirement, we will find that you are disabled."  20

C.F.R. § 404.1520(a)(4)(iii) (emphasis added); see also Torres v.

Comm'r of SSA, 279 Fed. Appx. 149, 151 (3d Cir. 2008).  In

addition, "[t]he applicant must satisfy all of the criteria in

the Listing in order to receive an award of disability insurance

benefits . . . under step three." Rice v. Barnhart, 384 F.3d
363, 369 (7th Cir. 2004) (citation omitted) (emphasis added);
Huntington v. Apfel, 101 F. Supp. 2d 384, 391 (D. Md. 2000)
(citing Sullivan v. Zebley, 493 U.S. 521, 531 (1990)) ("In order
to meet a Listing, every element of the listing must be
satisfied."). Thus, to be disabled at step three, a claimant
must have suffered, or be expected to suffer, all the elements of
a listed impairment continuously for twelve months.

In Huntington, the district court affirmed an ALJ's step-
three determination of non-disability, based upon a record in
which the some of the required elements of the listed impairment
were sometimes present, but the elements were not simultaneously
present for the required continuous twelve-month span. 101 F.
Supp. 2d at 391. The court based its ruling on findings such as
these:

> Although plaintiff did suffer muscle spasms [one
> element of the listed impairment] in August, 1975 and
> June 1991, nothing in the record suggests that the
> spasms continued between 1975 and 1991 or were
> frequent, ongoing and persistent, as required by
> Listing 1.05C.  Similarly, the medical records note
> that motor loss was present only during May and June
> 1984 and again in December 1991 and January 1992 but
> the records do not establish that the motor loss was
> persistent, as required under the Listing.
>
> As to muscle weakness [a second element of the
> listed impairment], plaintiff cites to May and June
> 1984 and December 1991 and January 1992 reports to
> support the presence of this symptom.  The records

reflect, however, that these occasional periods of
muscles weakness were initially reported after surgery,
but reports in June 1991, August 1991 and November
1992, reveal good strength and muscle development and
no clinical strength deficits.

Similarly, plaintiff's claim of sensory loss [a
third element of the listed impairment] is unsupported
by the record.  The only information (other than
isolated references in 1975 and 1984) relating to
sensory loss is an October 31, 1991 progress report
indicating diminished sensation in the "medial one and
one-half fingers of his right hand."  Within a few
days, on November 4, 1991, this numbness had completely
resolved.)

Id. at 391-92 (citations to the record omitted).


Everngam argues that the ALJ erred, at step three, by

determining that he did not have the listed impairment "disorders

of the spine," as described in 20 C.F.R. § 404, Subpart P,

Appendix 1, § 1.04A.  More specifically, he argues that the ALJ's

step-three determination was erroneous because the ALJ failed to

consider, and thus rejected, most of the opinions of his treating

physicians, and failed to give clear and convincing reasons for

rejecting those opinions.  Among other things, he cites the ALJ's

failure to refer to various relevant diagnoses, and the fact that

the ALJ mentioned one straight-leg raising test with a negative

result, i.e., a result that favored a finding of non-disability,

but did not mention several other leg-raising tests with positive

results.

The Commissioner counters that the ALJ's determination was supported by substantial evidence.  He further contends that claimant does not identify any medical opinion the ALJ failed to consider that contradicts the ALJ's finding, and that there is no evidence in the record that would support a determination that claimant suffered a listing-level impairment that lasted or was expected to last for a continuous period of at least twelve months, as required by 42 U.S.C. § 423(d)(1)(A).  The Commissioner's arguments are persuasive.

At step three, "if the impairment meets the conditions for one of the 'listed' impairments in the Social Security regulations, then the application is granted."  Seavey, 276 F.3d at 5 (citation omitted).  The relevant regulations define the listed impairment Everngam claims as follows:

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § 404, Subpt. P, App. 1.  And, as noted above, for an impairment to meet a listing, it must have lasted or be expected to last for a continuous period of at least twelve months.  <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iii); <u>Huntington</u>, 101 F. Supp. 2d at 391-92.

Regarding the weight that should be given to the opinions of treating sources, the pertinent regulations provide:

> Generally, we give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed [in this section] in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.

20 C.F.R. § 404.1527(d)(2).  In addition, the ALJ has an obligation to resolve inconsistencies in the evidence.  <u>See</u> 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.").

This case is very different from most of those in which a claimant invokes the rules for evaluating treating-source opinions; claimant does not argue that the ALJ erred by relying upon the opinion of a non-treating or non-examining medical source over the opinion of a treating source. Rather, he appears to fault the ALJ for relying upon treating-source medical evidence that undermined a determination of disability, while turning a blind eye to other treating-source evidence that supported such a determination, and he calls the existence of both positive and negative leg-raising test results an inconsistency in the record that required resolution by the ALJ.

The court will assume, for the sake of argument, that claimant is correct in asserting that the ALJ considered only the medical evidence referenced in his decision. Still, the record as a whole, including the evidence claimant criticizes the ALJ for ignoring, does not contain the quantum of evidence necessary to support a determination that claimant suffered from a listed impairment. Claimant was diagnosed with degenerative facet disease in May, 2006, and in November of that same year, he was diagnosed with lumbar radiculitis secondary to a herniated disk. But the mere diagnosis of a recognized disorder of the spine is not enough. To be a listed impairment, the disorder of the spine Everngam claims must "result[ ] in the compromise of a nerve

14

root," 20 C.F.R. § 404, Subpt. P, App. 1, 1.04A, must be accompanied by "positive straight-leg raising test,"[4] id., and all the elements of the impairment must have lasted, or be expected to last, for at least twelve months, see 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1509 & 404.1520(a)(4)(iii).

Of the spinal disorders with which claimant was diagnosed, two of them – radiculitis and a herniated disk – resolved within six months of diagnosis.  Thus, neither condition is sufficient support a determination of disability.  That leaves degenerative facet disease.  The court will assume that facet disease qualifies as a disorder of the spine for purposes of the listings, and will further assume that use of the term "degenerative" to describe claimant's facet disease constitutes a medical opinion that his facet disease will last for more than twelve months.  Even when the record is considered in light of those favorable assumptions, however, it cannot support a determination of disability.

Neither claimant's nerve-root compromise nor his positive straight-leg raising tests – essential elements of the listed disorder – meet the requisite twelve-month duration requirement.

---

[4] This is because Everngam claims a disorder of the lower back.

The earliest evidence of nerve-root compromise in this case is the November 26, 2006, clinical impression of lumbar radiculopathy.  But, in early April, 2007, Dr. Palacio, a treating physician, characterized claimant's radiculopathy as "resolved," and he reiterated that opinion about six weeks later, and also observed a "preservation of nerve root function."  At most, the record supports a determination that claimant had one or more compromised or compressed spinal nerve roots from late November, 2006, through early April, 2007, which, obviously, falls short of satisfying the duration requirement.

The results of Everngam's straight-leg raising test are similarly unavailing to his claim.  Claimant criticizes the ALJ for mentioning the negative straight-leg raising test from January, 2007, without mentioning other leg-raising tests with positive results.  Notwithstanding claimant's apparent contention to the contrary, his positive straight-leg raising tests on some dates are not inconsistent with his negative one(s) on other dates.  Rather, those tests are, collectively, evidence of a medical condition that was symptomatic on some occasions but not others.  Thus, the ALJ was under no obligation to say why he mentioned the results of one leg-raising test but not the results of others.  Moreover, even if claimant's January leg-raising test had been positive, claimant had leg-raising tests that were

16

negative bilaterally in March and May, 2006, less than twelve months after his first positive test on November 27, 2006, which, again, falls short of satisfying the duration requirement.

In sum, the medical record does not document any continuous twelve-month period during which claimant suffered from: (1) degenerative facet disease, radiculitis, or a herniated disc <u>and</u> (2) nerve-root compromise <u>with</u> (3) positive straight-leg raising test.  Because a claimant must satisfy all the elements of a listed impairment, <u>see</u> <u>Rice</u>, 384 F.3d at 369; <u>Huntington</u>, 101 F. Supp. 2d at 391, for a full twelve months, <u>see</u> 20 C.F.R. § 404.1520(a)(4)(iii), the ALJ's determination that claimant did not suffer from a listed impairment is supported by substantial evidence, and must be affirmed.

## Conclusion

For the reasons given, claimant's motion to reverse and/or remand (document no. 8) is denied, and the Commissioner's motion for an order affirming the ALJ's decision (document no. 9) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 6, 2009

17

cc:  Christopher G. Roundy, Esq.
     Vicki S. Roundy, Esq.
     Gretchen L. Witt, Esq.